UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RONNIE W. WOODS,

      Plaintiff,

v.                                    Case No: 5:26-cv-13-JSS-PRL

NATIONAL ASSOCIATION OF
REALTORS, FRANKLIN HUGHES,
NICOLA HUGHES, and KENDALL
CAPUTO,

      Defendants.

_____

**ORDER**

Plaintiff Ronnie Woods, proceeding *pro se*, filed this action against the National Association of Realtors; Franklin Hughes, a real estate broker and former senior Florida Real Estate Commission official; Nicola Hughes, the owner of a real estate firm; and Kendall Caputo, a real estate broker (collectively, the "Defendants"). (Doc. 1). Plaintiff seeks to proceed in forma pauperis. (Doc. 2). For the reasons explained below, Plaintiff's motion to proceed in forma pauperis is taken under advisement, and in an abundance of caution, Plaintiff will be given an opportunity to amend the complaint.

I.    **BACKGROUND**

Plaintiff initiated this action in the United States District Court for the District of Columbia by filing a "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)" on the standard form on September 6, 2025. (Doc. 1). He alleges that Defendants "conspired to suppress [his] For-Sale-By-Owner ["FSBO"] real estate sales between 2021 and 2025" by use of "fraudulent valuations, contract manipulation, and premature withdrawals of listings." (*See*

*id*. at p. 4). Plaintiff contends that these alleged bad acts constitute violations of 42 U.S.C. §§ 1981, 1982, 1983, the U.S. Constitution, and the Sherman Antitrust Act (the "Sherman Act"). (*See id*. at p. 3). As a result, Plaintiff asserts that he was unable to sell his four investment properties and has thus suffered financially, physically, and emotionally. (*See id*. at pp. 4-5). He claims to have evidence to substantiate his claims and attaches several exhibits, including email correspondence and documents filed in ongoing and/or closed state court proceedings. (*See* Doc. 1 at p. 4; Doc. 1-2; Doc. 1-3).[1] Plaintiff seeks damages and injunctive relief. (*See* Doc. 1 at p. 5).

Simultaneously with the filing of the complaint, Plaintiff filed a motion to proceed in forma pauperis on September 6, 2025. (Doc. 2). On January 6, 2026, this case was transferred from the United States District Court for the District of Columbia to this Court. (Doc. 15; *see* Doc. 12).

The Court notes that Plaintiff previously brought a similar suit in the Middle District of Florida that closely resembles the events that are alleged in this case. *See Woods v. Franklin*

---

[1] These documents reference Case Nos. 2025-CA-000209 and 2024-SC-006838 in the Fifth Judicial Circuit Court in and for Marion County, Florida ("Marion County Circuit Court"). Case No. 2024-SC-006838 appears to have been "re-closed," while Case No. 2025-CA-000209 was subsequently transferred to Leon County, Florida, pursuant to an order dated June 9, 2025, and remains ongoing. *See* cases in the Marion County Circuit Court, available at https://www.civitekflorida.com/ocrs/app/search.xhtml?tab=1; *see also Ronet v. Clerk of the Thirteenth Judicial Circuit in and for Hillsborough Cnty.*, No. 6:08-cv-1748-ORL-31KRS, 2008 WL 5110820, at *1 (indicating that courts may consider records outside the pleadings when determining whether a complaint should be dismissed as frivolous under § 1915) (citation omitted); *United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999) (stating that "[a] court 'may take judicial notice of its own records and the records of inferior courts'") (quoting *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987)).

Plaintiff's state court case, Case No. 2025-CA-001578, in Leon County Circuit Court remains open and pending. *See* cases in the Leon County Circuit Court, available at https://cvweb.leonclerk.com/public/online_services/search_courts/search_by_name.asp. Since the filing of Plaintiff's complaint and the motion to proceed in forma pauperis, Plaintiff has filed supplemental documents relating to his pending state court proceeding. (*See* Doc. 21).

*Hughes, et al.*, No. 5:25-cv-376-SPC-PRL (M.D. Fla. June 16, 2025) ("Prior Action"). In the Prior Action, Plaintiff similarly asserted that defendants (including Franklin Hughes, as well as various state agencies and officials) violated Plaintiff's constitutional rights under § 1983 related to "[d]efendants' actions [that] have prevented Plaintiff from selling his four investment properties, driving him into bankruptcy[,] and forcing him to rely on his girlfriend's charity," all of which was supported by Plaintiff's filings in a related state court case in Marion County Circuit Court. *See id.* at doc. 4 (M.D. Fla. July 8, 2025).[2] The undersigned took Plaintiff's motion to proceed in forma pauperis under advisement due to deficiencies noted in Plaintiff's amended complaint and gave Plaintiff the opportunity to file a second amended complaint on or before October 31, 2025. *See id.* at doc. 10 (M.D. Fla. Oct. 3, 2025). In that Order, the undersigned advised Plaintiff of the deficiencies in the amended complaint. *See id.*

On October 23, 2025, Plaintiff filed a "Notice of Non-Commencement and Consolidation in the District of Columbia" ("Notice"), indicating that he was proceeding with the Prior Action in the United States District Court for the District of Columbia, no further relief was requested in the notice "beyond noting the non-commencement status," and he wanted the docket to reflect that the case will not proceed further in the Middle District of Florida. *See id.* at doc. 11 (M.D. Fla. Oct. 23, 2025). On October 24, 2025, the Court construed

---

[2] Additionally, Plaintiff's amended complaint consisted of a litany of apparent grievances with defendants that appeared to stem entirely from his inability to sell his investment properties over the past few years. *See id.* While the Court could not discern the precise nature of Plaintiff's allegations, they seemed to involve four investment properties that Plaintiff listed for sale starting in 2022, but due to "regulatory misconduct," "suppression" of Plaintiff's listings on the internet, and in "retaliation" for filing grievances with the FREC and DBPR regarding such regulatory misconduct, defendants purportedly prevented him from selling those properties, causing him to go into bankruptcy. *See id.* at ¶¶ 11-13, 19-20, 37-38.

Plaintiff's Notice as a notice of voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i), noting that the Notice was self-executing, and dismissed the case without prejudice. *See id*. at doc. 12 (M.D. Fla. Oct. 24, 2025). On January 20, 2026, Plaintiff filed a Notice of Related Actions in the Prior Action (which is now closed), notifying the Court that the Prior Action is related to this instant action, and he listed three other related state court proceedings therein, including Case Nos. 2025-CA-000209 and 2024-SC-006838. *See id*. at doc. 15 (M.D. Fla. Jan. 20, 2026).

## II.   LEGAL STANDARDS

An individual may be allowed to proceed in forma pauperis if he declares in an affidavit that he is unable to pay such fees or give security therefor. *See* 28 U.S.C. § 1915(a)(1). However, before a plaintiff is permitted to proceed in forma pauperis, the Court is obligated to review the complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See id.* § 1915(e)(2). If the complaint is deficient, the Court is required to dismiss the suit *sua sponte*. *See id*.

"A lawsuit is frivolous if the plaintiff's realistic chances of ultimate success are slight." *Clark v. Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990) (internal quotations omitted); *see Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (stating that an action is frivolous if "it lacks an arguable basis either in law or in fact"); *Jackson v. Farmers Ins. Grp./Fire Ins. Exch.*, 391 F. App'x 854, 856 (11th Cir. 2010) (per curiam) (defining a frivolous case as one containing "clearly baseless" factual allegations or one based on an "indisputably meritless" legal theory) (quoting *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam)). A district court may dismiss a complaint under § 1915 on grounds of frivolousness if an

affirmative defense would defeat the action. *See Clark*, 915 F.2d at 640, 640 n.2 (indicating that absolute immunity of a defendant would justify the dismissal of a claim as frivolous). Indeed, "[i]ndigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit." *See Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (citation omitted)

In evaluating a complaint under § 1915, courts must liberally construe *pro se* filings and hold them to less stringent standards than papers drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts cannot act as counsel for plaintiffs or rewrite pleadings. *See United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021) (citation omitted). *Pro se* litigants must still comply with the procedural rules applicable to ordinary civil litigation. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

Nevertheless, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See id*. (quoting *Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *See Twombly*, 550 U.S. at 555 (citations omitted). Although a court must accept as true well-pleaded allegations, it is not bound to accept a legal conclusion stated as a "factual allegation" in the

complaint. *See id.*; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations omitted).

Subject-matter jurisdiction is a threshold issue in any case pending in the United States District Court. Federal courts are courts of limited jurisdiction, which are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *See Univ. of So. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "[A] court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001); *see Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking. *See Univ. of So. Ala.*, 168 F.3d at 410; *Fitzgerald*, 760 F.2d at 1251. If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. P. 12(h)(3); *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) ("[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction.").

III.    DISCUSSION

A.  Failure to Comply with the Federal Rules of Civil Procedure

At the most basic level, Plaintiff's complaint fails to meet the pleading requirements set forth in the Federal Rules of Civil Procedure. Plaintiff's allegations are vague, conclusory, non-specific, and lack well-pled facts. Plaintiff's complaint does not contain a short and plain statement of the claim showing that he is entitled to relief as required by Rule 8(a)(2). *See* Fed. R. Civ. P. 8(a)(2). Although Plaintiff is proceeding *pro se*, he is "still required to conform to procedural rules, and the court is not required to rewrite a deficient pleading." *See Washington v. Dep't of Child. & Fams.*, 256 F. App'x 326, 327 (11th Cir. 2007).

B.  The Sherman Act

Plaintiff lacks standing to bring a claim under the Sherman Act. Article III standing in federal court requires that a plaintiff must show that: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the defendants likely caused his injury; and (3) a favorable decision can likely redress his injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Tokyo Gwinnett, LLC v. Gwinnett Cnty., Ga.*, 940 F.3d 1254, 1262 (11th Cir. 2019) (citation omitted).[3]

---

[3] All three requirements are necessary, and the failure to establish any of them deprives a federal court of jurisdiction over that claim. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1208 (11th Cir. 2025). An injury in fact is "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted); *A&M Gerber Chiropractic LLC*, 925 F.3d 1205, 1210 (11th Cir. 2019) (stating that the controversy "cannot be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury" that can be resolved by the court's intervention) (citation and internal quotation marks omitted); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (indicating that "[a] particularized injury is one that affect[s] the plaintiff in a personal and individual way[,]" rather than a mere generalized grievance that anybody could pursue) (citation omitted).

"A proper antitrust plaintiff, however, must have more than Article III standing ('injury in fact' and 'case or controversy'). . . . [t]he plaintiff must have antitrust standing." *Dean v. Roku, Inc.*, No. 8:24-cv-2383-WFJ-TGW, 2025 WL 2299403, at *3 (M.D. Fla. Aug. 8, 2025) (internal citations omitted).

To have standing to assert a claim under the Sherman Act, the plaintiff must demonstrate that (1) he suffered an antitrust injury, and (2) the plaintiff must be an "efficient enforcer" of the antitrust laws. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1272-73 (11th Cir. 2015) (internal citations omitted). An antitrust injury is "injury of the type the antitrust laws were intended to prevent" and "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *See Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010) (quoting *Brunswick Corp v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *Duty Free Americas, Inc.*, 797 F.3d at 1272-73 ("When a plaintiff is seeking injunctive relief, this means it 'must allege threatened injury that would constitute antitrust injury if inflicted upon the plaintiff and the defendant's causal responsibility for such threatened injury.'") (quoting *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1452 (11th Cir. 1991)).

Plaintiff fails to allege an injury reflecting the anticompetitive nature of any conduct by the Defendants. Instead, Plaintiff merely alleges in a conclusory manner that Defendants "coordinated conduct amounts to retaliation, suppression of [his] ability to sell property For-Sale-By-Owner[,] . . . mirror[ing] the anticompetitive restraints[,]" and that "the Florida Real Estate Commission and DBPR [i.e., Florida Department of Business and Professional Regulation] . . . selectively refused enforcement while brokers and associations used state-backed MLS rules to restrain trade and exclude [him] from the market." (*See* Doc. 1 at pp. 3-

4). It is unclear what specific action(s) taken by Defendants violate the Sherman Act. Although Plaintiff alleges that Defendants' conduct is unconstitutional, seemingly Plaintiff's only injury is his inability to sell his four investment properties. As such, Plaintiff lacks standing to bring a claim under the Sherman Act. *See Claudet v. Sheriff of Osceola Cnty.*, No. 6:16-cv-301-ORL-40TBS, 2016 WL 6125671, at \*2 (finding that *pro se* plaintiff lacked standing to bring a claim under the Sherman Act because plaintiff alleged "no injury reflecting the anticompetitive nature of any conduct by the Sheriff").

Even if Plaintiff did have standing to bring a claim under the Sherman Act, Plaintiff's complaint fails to state a claim under § 1 or § 2 of the Sherman Act. Section 1 of the Sherman Act declares illegal "[e]very contract . . . or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations[.]" *See* 15 U.S.C. § 1. To establish a claim under § 1 of the Sherman Act, a plaintiff must allege an agreement between two or more parties that unreasonably restrains trade. *See Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996) (citations omitted); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1332-33 (11th Cir. 2010); *see also Aviation Spec., Inc. v. United Technologies Corp.*, 568 F.2d 1186, 1191-92 (5th Cir. 1978) (citation omitted). Section 2 of the Sherman Act prohibits monopolizing, or attempting to monopolize, or combining or conspiring to monopolize trade or commerce. *See* 15 U.S.C. § 2; *Feldman v. Jackson Mem'l Hosp.*, 571 F. Supp. 1000, 1010 (S.D. Fla. 1983), *aff'd*, 752 F.2d 647 (11th Cir. 1985) ("[A]ll three offenses covered by § 2 of the Sherman Act: monopolization, attempt to monopolize, and conspiracy to monopolize" and "[t]he general elements required to prove each of these violations are well-settled").

Plaintiff fails to plead sufficient facts to plausibly establish a violation under § 1 or § 2 of the Sherman Act. He generally alleges that Defendants "conspired to suppress [his] For-

Sale-By-Owner ["FSBO"] real estate sales between 2021 and 2025" by use of "fraudulent valuations, contract manipulation, and premature withdrawals of listings." (*See* Doc. 1 at p. 4). Although Plaintiff claims a violation of § 1 of the Sherman Act, he does not identify an agreement between two or more parties, nor does he show how such an agreement harmed him. Further, Plaintiff fails to allege what cause of action he is asserting under § 2 of the Sherman Act (i.e., monopolization, attempt to monopolize, and conspiracy to monopolize), and therefore, the Court is unable to evaluate the sufficiency of Plaintiff's claim under § 2 of the Sherman Act. *See Silva v. Powell*, No. 3:24-cv-742-MMH-LLL, 2024 WL 5375479, at *3 (M.D. Fla. Dec. 10, 2024); *Feldman*, 571 F. Supp. at 1010. Thus, Plaintiff fails to state a plausible claim under the Sherman Act.

### C.  42 U.S.C. §§ 1981, 1982, and 1983

Plaintiff alleges that Defendants' actions and conduct constitute violations under 42 U.S.C. §§ 1981, 1982, and 1983. (*See* Doc. 1 at p. 3). Plaintiff has failed to plausibly allege a civil rights violation.

Section 1981 prohibits race discrimination in the making and enforcement of private contracts. *See* 42 U.S.C. § 1981. To state a claim under § 1981, a plaintiff must plead facts demonstrating (1) "that [he] is a member of a racial minority"; (2) "that the defendant intended to discriminate on the basis of race"; and (3) "that the discrimination concerned one or more of the activities enumerated in the statute" (i.e., the right to make, perform, modify, and terminate contracts, and enjoy all benefits, privileges, terms, and conditions of the contractual relationship). *See Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171-72 (11th Cir. 2016) (quoting *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004)); *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1309 (11th Cir. 2010) (explaining that "[t]o

state a claim under § 1981 for interference with a right to contract, 'a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights'") (quoting *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007)); *Munnings v. FedEx Ground Package Sys., Inc.*, No. 6:07-cv-282-ORL-19KRS, 2008 WL 1849003, at *11 (M.D. Fla. Apr. 22, 2008) (indicating that to establish the third element of a § 1981 claim, "a plaintiff must prove that the defendant failed to perform a contractual obligation") (citation omitted); *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) ("A contractual injury includes any injury relating to 'the making, performance, modification, [or] termination of [the] contract[ ],' or to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.") (quoting 42 U.S.C. § 1981(b)).

Section 1982 prohibits racial discrimination as to the inheritance, purchasing, leasing, selling, holding, and conveying real and personal property. *See* 42 U.S.C. § 1982. Section 1982 is similar to § 1981 "except that it focuse[s], not upon rights to make and to enforce contracts, but rights related to the ownership of property." *See CBOS W., Inc. v. Humphries*, 553 U.S. 442, 446-47 (2008). To state a claim under § 1982, a plaintiff must allege facts showing (1) that he is a member of a protected class; (2) that Defendants intentionally discriminated against him on the basis of race; and (3) interference in his rights or benefits connected with the ownership of his property. *See Doss v. Bank of New York Mellon*, No. 8:17-cv-653-T-27AEP, 2017 WL 5624265, at *3 (M.D. Fla. Nov. 20, 2017) (citing *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004)); *Todd v. Alabama Power*, No. 09-0746, 2010 WL 749334, at *3 (S.D. Ala. Mar. 1, 2010) (internal footnote and citations omitted); *Prestige Restaurants & Ent., Inc. v. Bayside Seafood Rest., Inc.*, No. 09-23128-CIV, 2010 WL 680905, at *7 (S.D. Fla. Feb. 23, 2010), *aff'd*

- 11 -

*sub nom. Prestige Restaurants & Ent., Inc. v. Bayside Seafood Resturant, Inc.*, 417 F. App'x 892 (11th Cir. 2011).

Plaintiff alleges that Defendants "interfered with [his] property and contract rights" through "[t]heir coordinated conduct amount[ing] to retaliation, [and] suppression of [his] ability to sell property For-Sale-By-Owner." (*See* Doc. 1 at p. 3). Plaintiff's complaint is devoid of any allegations demonstrating that he is a member of a protected group, that any of the Defendants intended to discriminate against him based on his race, and that his ability to make and enforce contracts was impaired. Plaintiff offers only conclusory allegations and provides no factual allegations showing that a contract existed. Thus, Plaintiff fails to state a plausible claim under either § 1981 or § 1982.

Plaintiff attempts to assert a claim against Defendants pursuant to § 1983, alleging violations of his constitutional rights. (*See id.*). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (internal quotations omitted)).

To state a claim for relief under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). Importantly, "[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law

element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)); *see also Hernandez v. Echarte*, No. 24-11488, 2024 WL 4235458, at *1 (11th Cir. Sept. 19, 2024) (per curiam) ("To act 'under color of state law' under section 1983, a deprivation must involve a state actor.") (citing *Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021)). "[M]ore than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983." *Hannah v. Union Corr. Inst.*, No. 3:12-cv-436-J-20JBT, 2012 WL 1413163, at *1 (M.D. Fla. Apr. 23, 2012) (citing *L.S.T., Inc. v. Crow*, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam)).

The Eleventh Circuit has explained that "[o]nly in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Private parties are considered state actors and can be held liable under § 1983 if one of the following conditions are met: (1) the state coerced or significantly encouraged the alleged unconstitutional action (known as the "state compulsion test"); (2) the private parties performed a public function that was traditionally the state's exclusive prerogative (known as the "public function test"); or (3) the state became a joint participant because it insinuated itself into a position of interdependence with the private parties (known as the "nexus/joint action test"). *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing *Nat'l Broad Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)).

Here, even if the Court were to presume Plaintiff sufficiently alleged the violation of a federal constitutional right (which he has not), Plaintiff has failed to allege that any of the Defendants, who all appear to be private parties, satisfy any of the three conditions stated

- 13 -

above to be considered a state actor. Plaintiff asserts in a vague and conclusory manner that "Defendants acted under color of state law by jointly engaging with the Florida Real Estate Commission and DBPR [i.e., Florida Department of Business and Professional Regulation] to suppress [his] FSBO sales." (*See* Doc. 1 at p. 4). The complaint, however, lacks any further factual allegations supporting such a claim. *See Iqbal*, 556 U.S. at 681 (stating that conclusory allegations are "not entitled to be assumed true") (citing *Twombly*, 550 U.S. at 554-55); *see also Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188 (indicating that the Court need not accept such an allegation as true because it is a legal conclusion masquerading as a fact). There are no factual allegations suggesting that each of the Defendants was acting in concert with state officials or that the state insinuated itself into a position of interdependence with Defendants. Thus, Plaintiff fails to state a plausible claim under § 1983.

### D. *Younger* Abstention Doctrine

To the extent Plaintiff is asking the Court to intervene in any ongoing state court proceeding, this Court cannot interfere in such a proceeding pursuant to the *Younger* abstention doctrine. *See, e.g., Younger v. Harris*, 401 U.S. 37 (1971); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-37 (1982) (explaining the application of the *Younger* abstention doctrine in the civil context). "*Younger* and its progeny reflect the longstanding national public policy, based on principles of comity and federalism, of allowing state courts to try cases—already pending in state court—free from federal court interference." *Butler v. Ala. Judicial Inquiry Comm'n*, 245 F.3d 1257, 1261 (11th Cir. 2001) (citation omitted).

Under the *Younger* abstention doctrine, "federal courts ordinarily must refrain from deciding the merits of a case when (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the parties have an adequate

opportunity to raise any constitutional claims in the state proceeding." *See Newsome v. Broward Cnty. Pub. Defenders*, 304 F. App'x 814, 816 (11th Cir. 2008) (per curiam) (citing *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432); *see also Boyd v. Georgia*, 512 F. App'x 915, 918 (11th Cir. 2013) (per curiam) ("In order to decide whether the federal proceeding would interfere with the state proceeding, we look to the relief requested and the effect it would have on the state proceedings.") (quoting *31 Foster Child. v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003)); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (explaining that under the *Younger* abstention doctrine, federal courts will not interfere with certain state civil proceedings, including "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions") (citation omitted).

In Plaintiff's complaint and a myriad of documents filed in support of his allegations in the complaint, Plaintiff makes references to a state court proceeding, which appears to be active and pending in Leon County, and asks the Court to issue injunctive relief against Defendants "prohibiting suppression of For-Sale-By-Owner property sales" and "preventing retaliatory takedowns of FSBO listings," and requests "an order requiring preservation of all records, emails, and communications" that appear to be related to his state court proceeding. (*See* Doc. 1 at pp. 5, 11; Doc. 1-2; Doc. 1-3). Based on Plaintiff's requested relief, it appears that the *Younger* abstention doctrine may apply to the extent that the state court proceeding referenced in the complaint and supporting documents in this action remains active and pending.[4] *See 31 Foster Child.*, 329 F.3d at 1276 (determining that an ongoing state judicial

---

[4] And to the extent the state court proceeding has concluded, this Court would still not be an available avenue to seek review because the *Rooker-Feldman* doctrine precludes federal courts (other than the United States Supreme Court) from reviewing and rejecting final state court judgments or

proceeding exists when the state court is actively involved in overseeing or enforcing orders in a case); *Macleod v. Bexley*, 730 F. App'x 845, 848 (11th Cir. 2018) (finding that plaintiff's request in the complaint asking the court to review a state court order was barred by the *Younger* abstention doctrine because it "involve[d] an order 'uniquely in furtherance of the state courts' ability to perform their judicial functions'") (quoting *Sprint Commc'ns, Inc.*, 571 U.S. at 73); *Chestnut v. Canady*, 853 F. App'x 580, 583 (11th Cir. 2021) (per curiam) (indicating that "[g]enerally, in the absence of authority to the contrary, a federal court should assume that a state's procedures will afford the plaintiff an adequate remedy") (citing *31 Foster Child.*, 329 F.3d at 1279).

### E. Amendment

In an abundance of caution, the Court will provide the Plaintiff with an opportunity to file an amended complaint to clarify the basis of his claims. Plaintiff must provide the Court with sufficient information in a coherent manner so that it can perform the review required under § 1915. The amended complaint must clearly state the legal theory or theories upon which Plaintiff seeks relief and explain with factual allegations how each defendant is responsible. Plaintiff should carefully consider whether he can allege a claim in good faith because pursuing frivolous claims could lead to the imposition of sanctions.

Plaintiff is cautioned that, despite proceeding *pro se*, he is required to comply with this Court's Local Rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. Plaintiff may obtain a copy of the Local Rules from the Court's website

---

orders. *See, e.g.*, *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (explaining the *Rooker-Feldman* doctrine); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

- 16 -

(http://www.flmd.uscourts.gov) or by visiting the Office of the Clerk of Court. Additionally, resources and information related to proceeding in court without a lawyer, including a handbook entitled "Guide for Proceeding Without a Lawyer," can be located on the Court's website (http://www.flmd.uscourts.gov/pro_se/default.htm). Plaintiff should also consult the Middle District of Florida's Civil Discovery Handbook for a general discussion of this District's discovery practices (http://www.flmd.uscourts.gov/civil-discovery-handbook).

**IV.    CONCLUSION**

Accordingly, it is **ORDERED** that Plaintiff's Motion to Proceed in Forma Pauperis (Doc. 2) is **TAKEN UNDER ADVISEMENT**. Plaintiff shall file an amended complaint on or before **March 17, 2026**. The amended complaint must comply with all pleading requirements contained in Rules 8, 9, 10, and 11 of the Federal Rules of Civil Procedure and those contained in the Local Rules of the Middle District of Florida. Failure to comply with this Order may result in a recommendation that this action be dismissed for failure to prosecute.

**DONE** and **ORDERED** in Ocala, Florida on February 17, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 17 -